UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD GUYTON, JR.,

    Plaintiff,

v.                                                                     Case No. 1:09-cv-737
                                                                     Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on January 12, 1962 and attended college (AR 122).[1] He alleged a disability onset date of March 16, 2006 (AR 122, 159). Plaintiff had previous employment as a soldier (1981 to 1995) and as a mailhandler at the United States Postal Service (AR 152). Plaintiff identified his disabling conditions as back injury, arthritis, high blood pressure, insomnia, bladder control, weakness in legs, cramps, impotency, headaches, chronic tiredness, spinal/nerves (AR 151). Plaintiff provided the following explanation:

> A Postal truck driver hurt me in February of 1998. I had surgery in May of 98. I was in severe pain up until the surgery. There was some relief of pressure after the surgery, But I still was in no condition to work. I saw rehabilitation specialist for the next 18 months. The pain would not go away. I told them that something was wrong

---

[1] Citations to the administrative record will be referenced as (AR "page #").

with my back. In December of 2000 I was forced to return to the Post Office or my
benefits would be cut off. I had to take a Permanent Light Duty Job.

(AR 151). Plaintiff stated that he has back problems and that while his current job allows him to sit down and work, but he still has to move heavy cages into position (AR 151). Plaintiff stated that due to his condition, it hurts for him to sit and stand; he feels sharp stabbing pains all of the time; he gets painful cramps in both legs; he needs to use the restroom 20 times a day; and his pain is so bad that he needs to go to the locker room and lay down (AR 151). Plaintiff stated that his only mental problem is that "I can't understand why I get the run around from the government offices about how my mind works" (AR 151). On March 20, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 16, 2006, and last met the insured status requirement of the Social Security Act through December 31, 2010 (AR 16). At step two, the ALJ found that plaintiff suffered from severe impairments of: history of back injury; degenerative disc disease; leg cramp/pain; and essential hypertension (AR 16). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 16).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> work which involves lifting no more than 10 pounds at a time; only occasional climbing of ramps or stairs, stooping, crouching, kneeling, crawling and balancing; no climbing of ladders/ropes/scaffolds; and which allows him to sit/stand at will.

(AR 17). The ALJ further found that plaintiff:

is limited to simple, routine and repetitive tasks in a low stress job with only occasional decision making and changes in work setting which involves only occasional superficial contact with the public and co-workers.

(AR 17).

The ALJ also found that on the date last insured, plaintiff was unable to perform any of his past relevant work (AR 21). At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 21). Specifically, plaintiff could perform 12,000 jobs in Michigan involving sedentary, unskilled work: routine office clerk (7,000 jobs); small product assembly (3,000 jobs); and inspector/sort (2,000 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act (AR 22).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A.    The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.**

Plaintiff contends that the opinion of his treating physician, James Kerby, M.D., supports his disability claim. In a letter dated April 4, 2008, Dr. Kerby stated that plaintiff had a diagnosis of low back pain with radicular symptoms (AR 289). The doctor noted that plaintiff had a laminectomies in 1990 and 1998, and has had ongoing low back pain since the last surgery (AR 289). Since 2008, plaintiff has had increased discomfort in terms of intensity and prolonged flare-up episodes (AR 289). An updated MRI revealed "significant pathology in the lumbar area," which included "significant degenerative disk disease, facet arthritis with post surgical changes and a recurrent disk protrusion at the L3 and L4 levels," and "neuroforaminal narrowing in the L4-L5 and L5-S1 levels" (AR 289). Plaintiff had intact deep tendon reflexes, but decreased flexion in the lumbar spine and decreased sensation in the L3-L4 and L4-L6 dermatomes (AR 289).

On February 11, 2009, Dr. Kerby testified regarding his treatment of plaintiff as follows. Dr. Kerby has treated plaintiff since plaintiff had back surgery following the 1998 incident at the Post Office (AR 113). Plaintiff had two main complaints. First, chronic low back pain and radicular pain associated with spinal canal stenosis in the lumbar spine area (AR 113-14). Second, benign hypertension treated with medication (AR 113). Dr. Kerby treats plaintiff's chronic pain conservatively, with medications and home treatments (AR 114). The doctor did not see any "surgical interventions or invasive interventions" at that time or "on the horizon" (AR 114). Plaintiff has rated his pain level as six out of ten on a daily basis with sporadic flare ups (AR 115). Plaintiff reported "two or three acute flares" which occur in intervals of "anywhere from every three to four months" (AR 29). The doctor was not aware of any medication side effects (AR 115).

Dr. Kerby opined that plaintiff could not perform medium or heavy work (AR 115-16). The doctor felt that plaintiff would "likely not" be able to perform light work due to his "propensity to have flares with certain movements" and the fact that the pain escalates when he is on his feet for lengthy periods (AR 116). Based on these considerations, the doctor opined that light work "would not be a good situation for him" (AR 116). With respect to sedentary work, the doctor was "hesitant to say that [plaintiff] could commit to a regular [work] schedule" (i.e., eight hours a day, five days a week):

> Because of his persistent daily symptoms. And the level of discomfort that he encounters even with sitting or standing is significant, that it would interrupt his ability to, you know, focus on a job and activities and get tasks completed.

(AR 117). The doctor further stated that plaintiff might potentially "miss more than a few days of work a month" (AR 117). Finally, Dr. Kerby characterized plaintiff as "reasonably credible with complaints" (AR 117).

6

After reviewing the entire record, the ALJ concluded that plaintiff's allegations of disabling pain was only partially credible (AR 20). With respect to plaintiff's history of essential hypertension, the ALJ noted that plaintiff was not compliant with scheduled blood pressure checks and medication management, and failed to schedule an appointment with a health coach regarding a dietary plan for high blood pressure, because he watched his grandchildren (AR 19-20). When plaintiff filed his applications for benefits, he indicated that he watched his grandchildren on a daily basis and did other tasks such as making simple meals, ironing, shopping and driving (AR 20). Despite his complaints of continuing back pain, plaintiff was treated conservatively with chiropractic treatment and medication management (AR 20). With respect to plaintiff's reported flare ups (i.e., 2 to 3 flare ups every 3 to 4 months), the ALJ observed that this would amount to less than one flare up per month (AR 20). "Further, while Dr. Kerby noted the claimant had persistent symptoms, he did not specifically state that [the claimant] was unable to work sedentary work on a sustained competitive 40 hour basis, stating that he could 'potentially' miss more than a few days of work" (AR 20). The ALJ also questioned plaintiff's credibility, noting his reticence in answering simple, straightforward questions regarding his income (AR 20). In this regard, the ALJ noted plaintiff's testimony that his condition has significantly deteriorated since filing for benefits, but found no objective evidence to support this deterioration (AR 20). For these reasons, the ALJ gave "some weight" to Dr. Kerby's opinions (AR 20).

Plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. Kerby's opinions. The court disagrees. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a Social Security claimant's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater

7

weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The ALJ disagreed with Dr. Kerby's opinion that plaintiff was "reasonably credible" with complaints, noting that plaintiff did not comply with the prescribed treatment regimen for his hypertension. In addition, the ALJ pointed out that Dr. Kerby's testimony regarding plaintiff's ability to perform sedentary work was not definitive and based upon plaintiff's complaints regarding occasional flare ups. Based on the doctor's testimony, when plaintiff had flare ups, these occurred on average less than once per month. The only true restrictions evident from Dr. Kerby's opinions were that plaintiff could not perform "manual labor;" that plaintiff could not perform heavy and medium work; that light work "would not be a good situation for him;" and that restrictions for

8

sedentary work were based upon plaintiff's descriptions of his persistent daily symptoms which could potentially make plaintiff "miss more than a few days of work a month." Based on this review, Dr. Kerby's opinions were largely consistent with the RFC determination. In addition, the ALJ provided good reasons for rejecting the doctor's opinions that were arguably more restrictive than the RFC. Accordingly, plaintiff's claim of error should be denied.[2]

### B. The ALJ did not have substantial evidence to support his finding that Plaintiff could have performed sedentary work.

Plaintiff contends that the ALJ did not include Dr. Kerby's restrictions in the hypothetical question posed to the vocational expert (VE) at Step five of the sequential evaluation. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and*

---

[2] The court notes that plaintiff apparently contests the ALJ's credibility determination. *See* Plaintiff's Brief at pp. 12-13. This was not raised in the statement of errors and plaintiff cites no law in support of his position. Even if plaintiff had properly asserted and briefed this issue, he would not prevail. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded). The ALJ set forth sufficient reasons for discounting plaintiff's credibility. There is no compelling reason to disturb this credibility determination.

*Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff submits that the VE's testimony supports a finding of disability based upon two hypothetical questions posed by plaintiff's counsel at the hearing. The first hypothetical states:

> [Dr. Kerby] says that my client has occasional flares of pain which are very significant and last several days, might cause him to miss more than a few days of work potentially. If that were the case, would he be unable to perform work on a regular basis and according to the jobs you've just described . . .?

(AR 59). Given this hypothetical question, the VE testified that plaintiff would be precluded from performing the 12,000 jobs that he could perform under the ALJ's RFC determination (AR 59-60). In a second hypothetical, plaintiff's counsel asked the VE if plaintiff would still be able to perform those jobs if he was off task 20 percent or more of the time due to pain (AR 60). Once again, the VE testified that this condition would preclude the jobs (AR 60).

The ALJ, however, did not find that plaintiff suffered from the restrictions as set forth in counsel's hypothetical questions. Plaintiff counsel's first hypothetical is not supported by the evidence. As previously discussed, Dr. Kerby's testimony described a situation in which plaintiff potentially would miss less than one day a month due to flare ups. In addition, the ALJ made no finding which indicates that plaintiff's pain caused him to be "off task" 20 percent of the time. The ALJ did not accept either of these assumptions as credible limitations. Accordingly, plaintiff's claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: August 4, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).